Samuel GART, Plaintiff–Appellant,

v.

LOGITECH, INC., Defendant–Appellee.

No. 00–1088.

United States Court of Appeals, Federal Circuit.

June 26, 2001.

Rehearing and Rehearing En Banc Denied Aug. 21, 2001.

Joseph R. Re, Knobbe, Martens, Olson & Bear, LLP, of Newport Beach, CA, argued for plaintiff-appellant. With him on the brief was William R. Zimmerman.

William L. Anthony, Orrick Herrington & Sutcliffe, LLP, of Menlo Park, CA, argued for defendant-appellee. With him on the brief was Terrence P. McMahon, Eric L. Wesenberg, and Rowena Y. Young.

Before LOURIE, RADER, and LINN, Circuit Judges.

LINN, Circuit Judge.

On cross motions for summary judgment, the United States District Court for the Central District of California (the "district court") determined that Logitech, Inc. ("Logitech") does not infringe claim 7 of Samuel Gart's ("Gart") U.S. Patent No. 4,862,165 (the " '165 patent") either literally or under the doctrine of equivalents. *Gart v. Logitech, Inc.*, No. CV 98–5957 CBM (C.D.Cal. Aug. 16, 1999) ("*Gart I*") (claim construction and literal infringement analysis); *Gart v. Logitech, Inc.*, No. CV 98–5957 CBM (C.D.Cal. Oct. 23, 1999) ("*Gart II*") (infringement under the doctrine of equivalents analysis). The district court also determined on a motion for summary judgment that Gart's accrual of damages under 35 U.S.C. § 287(a), if any, for Logitech's TRACKMAN VISTA, TRACKMAN MARBLE, TRACKMAN MARBLE +, and TRACKMAN MARBLE FX products begins from January 30,

1997, and for Logitech's MOUSEMAN, and MOUSEMAN + products begins from July 23, 1998. *Gart v. Logitech, Inc.*, No. CV 98–5957 CBM (C.D.Cal. Aug. 18, 1999) (*"Gart III "*). Gart appeals these decisions.

We conclude that the district court erred in construing the "angular medial surface" of claim 7 to include a "ledge." Moreover, we cannot determine with certainty based on the factual record before us whether there are any genuine issues of material fact regarding infringement, either literally or under the doctrine of equivalents, by the accused products in light of our revised claim construction. Accordingly, we vacate the court's grant of summary judgment of no infringement, either literally or under the doctrine of equivalents, and remand for further proceedings.

In addition, we conclude that the district court erred in its determination of when Gart complied with the statutory notice requirement of § 287(a) as to the TRACKMAN VISTA and MARBLE products. Thus, we reverse-in-part the district court's grant of summary judgment on this issue.

## BACKGROUND

The '165 patent was issued to Gart on August 29, 1989. The technology involved relates to ergonomically shaped computer mouses for reducing muscle fatigue. Claim 7, the only claim at issue, reads as follows:

7. A computer input accessory apparatus of the type upon which a hand rests for selectively activating sensors generating signals for affecting operation of the computer to which the apparatus is electrically connected, the apparatus being ergonomically shaped to minimize hand fatigue; the apparatus comprising: a housing configured to receive the anterior surface of the hand and means for supporting said housing on an underlying surface;

said housing having an arched metacarpal-phalangeal support surface, a concave thenar pad support surface, a distal phalange support surface for the forefinger, a distal phalange support surface for the thumb and an angular medial surface for supporting the three remaining ulnar fingers in a wrapped configuration with flexion of the distal, middle and proximal phalanges of said ulnar fingers.

'165 patent, col. 8, ll. 31–47.

In 1989, prior to the issuance of the '165 patent, Gart approached Logitech to discuss licensing the then-pending application. However, Logitech opted to forego this opportunity.

In July of 1993, Moustrak, Inc. took out a royalty-bearing license from Gart on the '165 patent. Moustrak, Inc. manufactured and sold the Colani Mouse, paying royalties to Gart under the license. Moustrak, Inc. did not mark the Colani Mouse with the '165 patent number.

On April 5, 1995, Gart, through his patent attorney, sent a letter accompanied by the '165 patent to Logitech. The letter stated that Gart was "the holder of U.S. Patent No. 4,862,165." The letter also noted that Logitech was "selling a trackball product under the trademark TRACKMAN VISTA" and that Logitech may "wish to have [its] patent counsel examine the enclosed ['165] patent (particularly claims 7 and 8) to determine whether a non-exclusive license is needed under that patent." On May 15, 1995, Logitech's patent counsel replied to the April 5 letter noting that it had just begun a review of the patent, and that "it [would] take some time to evaluate Logitech's interest, if any, in a license under the ['165] patent."

On September 4, 1996, as a follow-up to a phone conference with Logitech, Gart, through a new patent attorney, forwarded another letter and another copy of the '165 patent to Logitech. This letter indicated that Logitech "may find the ['165] patent particularly interesting relative to [its] trackball product ... being sold under the trademark TRACKMEN [sic-TRACKMAN] VISTA and TRACKMEN [sic-TRACKMAN] MARBLE." Logitech, through new patent counsel, responded to this letter on September 25, 1996 noting that the '165 patent "does not cover any of the Logitech trackball products ... [because they do not have] a concave surface (14 of Fig. 1) in combination with a flat surface (16) for resting the hypo-thenar portion of the hand ... [or] a medial ledge surface 18 around which the fingers can be wrapped."

On January 30, 1997, Gart, through yet another patent attorney, replied to Logitech's September 25 letter. In the reply, Gart stated that he was investigating "the Logitech Vista and Marble Trackballs [sic] infringement of [the '165 patent]." The letter also asked for Logitech's explanation of how the September 25 letter "is applicable to Claim 7 ... [which] does not recite a 'medial ledge surface 18 around which the fingers can be wrapped,' [but] rather ... recites 'an angular medial surface for supporting the three remaining ulnar fingers in a wrapped configuration.'" On March 5, 1997, Logitech again denied that claim 7 of the '165 patent covered the VISTA and MARBLE designs, noting in particular that they did not include "an *angular* medial surface for supporting the three remaining fingers in a *wrapped configuration* with *flexion of the distal, middle and proximal phalanges* of the ulnar fingers (Fig. 8, items 18, 26 and 24)." (emphasis in original)

On July 23, 1998, Gart filed a complaint against Logitech alleging that Logitech's MOUSEMAN, MOUSEMAN +, TRACKMAN VISTA, TRACKMAN MARBLE, TRACKMAN MARBLE +, and TRACKMAN MARBLE FX products infringe claim 7 of the '165 patent. On May 10, 1999, Gart filed a motion for partial summary judgment of literal infringement of claim 7 of the '165 patent. On that same day, Logitech filed a motion for summary judgment seeking limitation of damages pursuant to 35 U.S.C. § 287(a). Logitech's motion asserted that Gart failed to give notice of Logitech's alleged infringement for the TRACKMAN products until January 30, 1997 and for the MOUSEMAN products until the complaint was filed. Logitech filed a separate motion for summary judgment of non-infringement by any of its mouse products on May 17, 1999. The court denied Gart's motion and granted both of Logitech's motions for summary judgment.

Gart timely appealed the denial of its motion regarding infringement and the granting of both Logitech's limitation of damages motion and its non-infringement motion. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I. Standard of Review

We review the district court's grant of summary judgment de novo. *See Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed.Cir.1998). However, in reviewing a denial of a motion for summary judgment, we give deference to the district court, and "will not disturb [that] court's denial of summary judgment unless we find that the court has indeed abused its discretion." *SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1333, 51 USPQ2d 1811, 1815 (Fed.Cir.1999). When both parties move for summary judgment, the court must

evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *McKay v. United States,* 199 F.3d 1376, 1380 (Fed.Cir.1999).

In considering the respective motions for summary judgment, we must decide "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307, 46 USPQ2d 1752, 1755 (Fed.Cir.1998). If there are no material facts in dispute precluding summary judgment, our task is to determine whether the judgment granted is correct as a matter of law. *Prochorenko v. United States,* 243 F.3d 1359, 1362 (Fed.Cir. Mar.23, 2001).

■ A determination of infringement requires a two-step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,* 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). "In order for a court to find infringement, the plaintiff must show the presence of every ... [limitation] or its substantial equivalent in the accused device." *Wolverine World Wide, Inc. v. Nike, Inc.,* 38 F.3d 1192, 1199, 32 USPQ2d 1338, 1341 (Fed.Cir.1994). Claim construction is an issue of law that we review de novo. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456, 46 USPQ2d 1169,

1174 (Fed.Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979, 34 USPQ2d 1321, 1322 (Fed.Cir. 1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998). An infringement issue is properly decided upon summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents. *Id.*

■ Like the determination of infringement, compliance with the marking statute, 35 U.S.C. § 287(a), is a question of fact, *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111, 39 USPQ2d 1001, 1010 (Fed. Cir.1996). Thus, this issue is properly decided upon summary judgment when no reasonable jury could find that the patentee either has or has not provided actual notice to the " 'particular defendants by informing them of his patent and of their infringement of it.' " *Amsted Indus. Inc., v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187, 30 USPQ2d 1462, 1469 (Fed.Cir.1994) (quoting *Dunlap v. Schofield,* 152 U.S. 244, 247–48, 14 S.Ct. 576, 38 L.Ed. 426 (1894)).

## II. Analysis

### A. Claim Construction

■ "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc., v. Serv. Eng'g Corp.,* 216 F.3d 1343, 1347, 55 USPQ2d 1161, 1163 (Fed.Cir.2000) (internal quotations and citation omitted). Interpreting the asserted claims begins with a review of

the intrinsic evidence, which consists of the claim language, the written description, and the prosecution history. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 231 F.3d 859, 865, 56 USPQ2d 1647, 1652 (Fed. Cir.2000); *Embrex*, 216 F.3d at 1347, 55 USPQ2d at 1163; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996) (noting that the claims, specification, and prosecution history are "the most significant source[s] of the legally operative meaning of disputed claim language.") Extrinsic evidence may be accepted by the court to enhance its understanding of the technology. *EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 892, 48 USPQ2d 1181, 1184 (Fed.Cir.1998). However, extrinsic evidence cannot be used to contradict the established meaning of the claim language. *Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368, 1373, 47 USPQ2d 1732, 1736 (Fed.Cir.1998).

■ The district court construed the phrase "an angular medial surface for supporting the three remaining ulnar fingers in a wrapped configuration with flexion of the distal, middle, and proximal phalanges of said ulnar fingers" to require that the mouse housing have "an angular ledge for supporting the three remaining fingers [i.e., the middle, ring, and small fingers] in an enclosed or folded position." *Gart I,* slip op. at 5. The district court then compared each of the accused products to the claim as construed and summarily concluded that each product lacked the claimed angular medial surface either literally or equivalently. *Gart I,* slip op. at 6; *Gart II,* slip op. at 4.

Both parties suggest that the district court understood the term "angular ledge" to include a concave depression or curved undercut. We note, however, that the district court stated that "even if [it] were persuaded that ... infringement of Claim 7 does not require a surface area called a 'curved undercut' or 'concave depression' beneath the angular medial surface, [it] finds that the ... plain language of Claim 7 ... requires that the angular medial surface support the middle, ring, and small fingers in an enclosed or folded configuration." *Gart II,* slip op. at 5. Thus, it is not at all clear that the district court construed the "angular ledge" to include a curved undercut or concave depression. On the other hand, what is clear from *Gart I* and *Gart II* is that the district court construed the "angular medial surface" of claim 7 to require a "ledge" and that some surface over that ledge supports the middle, ring, and small fingers in an enclosed or folded position. For the reasons we will discuss below, we conclude that it was erroneous to construe the plain language of claim 7 to require a "ledge." Moreover, in view of that erroneous determination, it would also be erroneous to require that ledge to include a concave depression or curved undercut area.

In support of the district court's construction, Logitech asserts that to properly interpret the structure defined by the claim, which it concludes is the critical feature of the invention, the court should look to the drawings. Logitech notes that all of the drawings show that the support structure for keeping the three remaining ulnar fingers in a wrapped configuration has a ledge with an undercut area.

In addition, Logitech asserts that the written description particularly describes the invention as having a "medial ledge undercut" to support the three remaining ulnar fingers, and that this reference is not related to a preferred embodiment. Moreover, Logitech notes that Gart distinguished his invention in the '165 patent specification from three prior art references and in so doing stated that those references fail to set forth an undercut area for the middle, ring, and small fin-

gers. Logitech also contends that this distinction over the prior art was critical to the United States Patent and Trademark Office's decision that claim 7 was patentable. In this regard, Logitech notes that the examiner's reasons for allowance state: "the prior art fails to teach the details on the shape and surfaces of the hand controller taught by the instant claims."

None of Logitech's arguments persuades us that the district court's claim construction was correct. Logitech is certainly correct that claims do not have meaning removed from the context from which they arose, i.e., "the claims are directed to the invention that is described in the specification." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352, 58 USPQ2d 1076, 1079 (Fed.Cir.2001). In addition, it is certainly correct that the specification and the prosecution history should be consulted to construe the language of the claims. However, we perform this consultation to determine if the patentee has chosen to be his or her own lexicographer, *In re Paulsen*, 30 F.3d 1475, 1480, 31 USPQ2d 1671, 1674 (Fed.Cir.1994)(noting that claim terms may be defined by the patentee in the specification as long as such defining is done with reasonable clarity, deliberateness, and precision), *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882, 56 USPQ2d 1836, 1839 (Fed.Cir.2000)(noting that distinguishing remarks contained in both the specification and in the prosecution history contributed to finding that the patentee had narrowed the construction of the sealingly connected limitation); *Southwall Techs., Inc. v. Cardinal IG, Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed.Cir.1995)(noting that arguments and amendments made during the prosecution of a patent application and other aspects of the prosecution history, must be examined to determine the meaning of terms in the claims because claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers), or when the language itself lacks sufficient clarity such that there is no means by which the scope of the claim may be ascertained from the language used, *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1554, 42 USPQ2d 1737, 1741 (Fed. Cir.1997), *overruled on other grounds by Cybor*, 138 F.3d 1448, 46 USPQ2d 1169. However, when the foregoing circumstances are not present, we follow the general rule that terms in the claim are to be given their ordinary and accustomed meaning. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989, 50 USPQ2d 1607, 1610 (Fed.Cir.1999).[1] "In short, a court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms." *Id.*

Contrary to Logitech's assertion, the '165 patent specification does not describe "the invention" as having a "medial ledge undercut to support the middle, ring and small fingers of the hand." '165 patent, col. 3, ll. 29–36. This portion of the specification merely exemplifies one embodiment of the invention that would provide "a great deal of comfort." *Id.* The specification clearly states that the provision of "an angular medial surface" for supporting the remaining three ulnar fingers in a wrapped configuration will achieve the object of the invention, i.e., an ergonomic design of a hand controller apparatus that minimizes hand fatigue. *Id.* at col. 3, l. 60—col. 4, l. 3. Furthermore, the description at column 5, lines 29–34, to which the

---

1. Of course, "[a] common meaning, such as one expressed in a relevant dictionary, that flies in the face of the patent disclosure is undeserving of fealty." See *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1250, 48 USPQ2d 1117,1122 (Fed.Cir.1998).

district court referred in construing claim 7 to include a ledge, is merely a description of the preferred ergonomic design that minimizes hand fatigue.

Admittedly, the drawings show a controller housing having an angular ledge with a concave or flat undercut area over which the three remaining ulnar fingers must be wrapped. However, the '165 patent presents these drawings only to depict the preferred embodiment. *Id.* at col. 4, l. 15—col. 6, l. 46. These drawings are not meant to represent "the" invention or to limit the scope of coverage defined by the words used in the claims themselves. In view of the foregoing, we conclude that the entirety of the specification describes several embodiments of an ergonomic hand controller, including a controller with an angular medial ledge, a controller with an angular medial ledge having an undercut area, and a controller with an angular medial surface. The written description does not explicitly limit the subject matter of the patent to the ledge configuration set forth in the drawings.

We acknowledge that Gart made statements at column 2, lines 28–63 of the specification distinguishing the prior art, noting in particular that at least three of the references did not include the "undercut curved areas." However, Gart also notes in the specification that the "prior art [that has attempted to provide specially shaped hand engaging surfaces] either [does] not provide the full ergonomic surface design of the present invention or [is] simply incompatible with the surface shapes needed in a hand controller as opposed to other hand-related applications." *Id.* at col. 2, ll. 18–26.

Moreover, we also note that Gart indicates in the specification that this undercut feature that the prior art does not have is a feature of the preferred embodiment. *Id.* at col. 5, ll. 34–43. From the foregoing, we conclude that Gart distinguished his preferred embodiment from particular prior art references on the basis of its undercut feature: but, Gart also noted that those same references did not contain all of the ergonomic surface features of the invention or were incompatible with the surface shapes needed in a hand controller. In other words, Gart did not in any way limit all of his claims to a controller with an angular medial ledge by the remarks distinguishing the prior art.

Finally, we do not agree with Logitech that the examiner expressly allowed the claims because "an undercut area" was novel and non-obvious. It is undisputed that the examiner remarked that "claims 1 and 7 recite a hand controller ... apparatus having various surfaces and shaped in order to provide support to various parts of a user's hand operating the device to minimize hand fatigue ." Moreover, the examiner asserted that "the details on the shape and surfaces ... taught by the claims" were not taught by the prior art. However, the examiner never stated that the patentable difference over the prior art was "the concave undercut area" of the claimed device. We note that drawing inferences of the meaning of claim terms from an examiner's silence is not a proper basis on which to construe a patent claim. *DeMarini Sports, Inc., v. Worth, Inc.,* 239 F.3d 1314, 1326, 57 USPQ2d 1889, 1896 (Fed.Cir.2001).

 We conclude that the '165 patent does not attribute a special meaning to the phrase "angular medial surface," and there were no express representations made in obtaining the patent regarding the scope and meaning of the claim terms. Moreover, the scope of claim 7 may be ascertained from the plain language of that claim. Thus, we cannot sustain the district court's interpretation of the claim language "angular medial surface" as requiring "an angular medial ledge." Such a

construction would improperly add a limitation appearing in the specification and the drawings, but not appearing in the unambiguous language of the claim. *See Intervet Am., Inc. v. Kee–Vet Labs., Inc.,* 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989) (noting that "courts cannot alter what the patentee has chosen to claim as his invention"); *Southwall,* 54 F.3d at 1576, 34 USPQ2d at 1676; *Wang Labs., Inc. v. Am. Online, Inc.,* 197 F.3d 1377, 1383, 53 USPQ2d 1161, 1165 (Fed. Cir.1999); *Modine Mfg. Co. v. United States Int'l Trade Comm'n,* 75 F.3d 1545, 1551, 37 USPQ2d 1609, 1612 (Fed.Cir. 1996). Moreover, it is well established that broad claims supported by the written description should not be limited in their interpretation to a preferred embodiment, *e.g., Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855, 865, 9 USPQ2d 1289, 1299 (Fed.Cir.1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations."), which we deem to be the case here. Rather, the terms of the phrase "angular medial surface for supporting ... in a wrapped configuration with flexion" must be given their ordinary meaning.

We adopt the ordinary definitions of the terms "wrapped" and "flexion," i.e., "to enclose ... or to surround" and "partially bent," respectively, proffered by Gart because they are standard dictionary definitions that Logitech does not dispute. The parties do not dispute that "the three remaining ulnar fingers" refers to the middle, ring, and small fingers. The parties do not proffer an ordinary definition of the remaining terms. The ordinary definition of the term "angular" and "surface" means "having one or more angles," and "the exterior or upper boundary of an object or body, respectively." Websters New Collegiate Dictionary 45, 1172 (1975). Moreover, as for the phrase "distal, middle, and proximal phalanges," we take judicial no-tice that this refers to the bones of the fingers from the tip down to, but not including, the palm.

Therefore, we conclude that "an angular medial surface for supporting the three remaining ulnar fingers in a wrapped configuration with flexion of the distal, middle, and proximal phalanges of said ulnar fingers" merely requires an angled surface that supports the middle, ring, and small fingers in a folded position such that the distal, middle and proximal bones of the fingers are partially bent over that angled surface. We note that the foregoing definition does not require that the middle, ring, and small fingers be supported on the surface such that they are folded under.

### B. Infringement

After claim construction, the next step in an infringement analysis is comparing the properly construed claims with the allegedly infringing devices. *Kemco Sales, Inc. v. Control Papers Co.,* 208 F.3d 1352, 1360, 54 USPQ2d 1308, 1312 (Fed.Cir. 2000). This comparison is a question of fact. *Id.* Thus, if we agree with the district court that there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law, we can affirm the district court's grant of summary judgment. Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *see also Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.,* 212 F.3d 1377, 1381, 54 USPQ2d 1841, 1843 (Fed.Cir.2000) (holding that a fact issue is not in genuine dispute if a reasonable jury could only find in favor of the moving party).

In its literal infringement analysis, the district court did not discuss the structure of the accused products except to summarily conclude that none of them has "an angular medial surface for supporting the three remaining ulnar fingers in an enclosed or folded configuration." *Gart I,*

slip op. at 6–7. The court, likewise, summarily concluded that none of the accused products has "an equivalent angular medial surface area shaped for supporting the three remaining ulnar fingers in a wrapped configuration" and thus these products do not infringe claim 7 under the doctrine of equivalents. *Gart II*, slip. op. at 5.

 In support of the district court's conclusion, Logitech contends that there is no infringement by any of its accused products since they do not contain an undercut area for the middle, ring, and small fingers such that the "angular medial ledge" would support those fingers in a wrapped configuration, or any equivalent ledge structure.[2] In addition, Logitech contends that to the extent that any fingers do traverse a medial area on its accused products, in no circumstances is the middle finger supported on this medial area. We cannot agree with Logitech's reasoning that summary judgment of noninfringement was properly granted by the district court. Logitech's assertions of noninfringement, like the district court's conclusions, are premised on an erroneous construction of claim 7. As set forth in the claim construction above, claim 7 does not require an "angular medial ledge." Rather, the angular medial surface required by claim 7 calls for an angled surface that supports the middle, ring, and small fingers in a folded position such that the distal, medial, and proximal phalangeal regions of those fingers are partially bent

over that surface, without necessarily being folded under.

 Gart contends that while the district court's grant of summary judgment of no infringement rests on an erroneous claim construction and should be vacated for that reason alone, this court can find, as a matter of law, that the accused products satisfy the literal requirements of claim 7 because the structure of Logitech's accused products is undisputed. While we agree with Gart that the structure *per se* of the accused products is undisputed, we cannot determine with certainty based on those structures whether there are any genuine issues of material fact regarding the manner in which the angled surfaces of these products support the middle, ring, and small fingers. The district court's opinion that the accused devices do not literally infringe claim 7 or infringe that claim under the doctrine of equivalents simply states that conclusion without providing any reasoning, and thus, does not aid us in this regard. Accordingly, we vacate the district court's judgment of noninfringement and remand for further proceedings consistent with this opinion.

Should the district court need to reach the issue of infringement under the doctrine of equivalents, we note that while claim 7 literally requires an angled surface that supports the three remaining ulnar fingers in a folded position such that the distal, medial, and proximal phalangeal regions are partially bent over that angled surface, there is nothing to preclude an

---

**2.** As discussed in the claim construction section above, Logitech notes that Gart distinguished his invention in the '165 patent specification from three prior art references. Logitech contends that these are remarks made in the prosecution history of the '165 patent. However, we note that the specification in and of itself is not part of the "prosecution history." Moreover, since such remarks are part of the specification and not

part of the prosecution history, they are not relevant to an evaluation of whether or not prosecution history estoppel bars a finding of infringement under the doctrine of equivalents as set forth in the court's majority opinion in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558, 56 USPQ2d 1865 (Fed.Cir.2000), *cert. granted*, —— U.S. ——, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001).

analysis of whether or not the accused devices include an equivalent element that performs substantially the same function in substantially the same way to achieve substantially the same result or otherwise differs only insubstantially.

### III. Limitation of Damages

When a patented article has been produced by a patentee or its licensee, the amount of damages the patentee can recover in an infringement suit is statutorily limited to those acts of infringement that occurred after the patentee gave the alleged infringer "notice of infringement." 35 U.S.C. § 287(a) (1994). The statute permits either constructive notice, which is accomplished by marking the article with the patent number, or actual notice. The requirement of actual notice is designed to assure that the accused infringer knew of the adverse patent and the alleged infringement during the period in which its liability accrues. *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1470, 44 USPQ2d 1422, 1428 (Fed. Cir.1997).

The parties agree that the Colani Mouse, sold by Gart's licensee but not marked with the '165 patent number, was a patented article within the meaning of 35 U.S.C. § 287(a), thus subjecting Gart to the actual notice requirement of 35 U.S.C. § 287(a). While the parties do not dispute the factual content of the April 5, 1995 (the "1995 letter"), September 4, 1996 (the "1996 letter"), or January 30, 1997 (the "1997 letter") letters, they · dispute which of these letters effected actual notice.

We addressed the statutory requirement of actual notice in *Amsted,* stating that mere "notice of the patent's existence or ownership" is not "notice of the infringement," and as such would be insufficient to comply with section 287(a). 24 F.3d at 187, 30 USPQ2d at 1469. We concluded that "affirmative communication [to the alleged infringer] of a specific charge of infringement by a specific accused product or device" is required to comply with section 287(a). *Id.*

 The district court concluded that actual notice of infringement of the TRACKMAN MARBLE and TRACKMAN VISTA products occurred with the 1997 letter, and, as to the remaining products, the requirement was met by Gart's filing of its infringement suit. In the district court's opinion, the 1995 letter was insufficient notice because it did not inform Logitech of the "activity" believed to be an infringement, and the 1996 letter was insufficient because it did not indicate Gart's belief that the TRACKMAN VISTA and MARBLE products were infringing.

In support of the district court's decision, Logitech contends that the 1995 and 1996 letters, which do not use the word "infringement," are insufficient actual notice because they were at best an invitation for Logitech to study the patent and to determine for itself whether there might be an infringement. This argument and the district court's findings are reminiscent of the argument made by appellant and rejected by this court in *SRI,* namely that notice was insufficient without an unqualified charge of infringement and a threat of suit. 127 F.3d at 1470, 44 USPQ2d at 1428.

In *SRI,* we stated that "[informing the alleged infringer] of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise" complies with the actual notice requirement of the marking statute. *Id.* (distinguishing the criteria for actual notice from the criteria for filing a declaratory judgment action, which requires a threat of

suit). In other words, in *SRI* we explained that as long as the communication from the patentee provides sufficient specificity regarding its belief that the recipient may be an infringer, the statutory requirement of actual notice is met. *Id.* Thus, the requirement of "a specific charge of infringement" set forth in *Amsted* does not mean the patentee must make an "unqualified charge of infringement."

Determining whether the patentee's communication provides "sufficient specificity" regarding its belief that the recipient may be an infringer cannot take into consideration the knowledge or understanding of the alleged infringer, but must focus on the action of the patentee. *Amsted,* 24 F.3d at 187, 30 USPQ2d at 1469 ("it is irrelevant ... whether the defendant knew of ... his own infringement"). Therefore, contrary to assertions by Gart, whether or not the alleged infringer subjectively believed that the patentee's letter was a charge of infringement has no bearing on the adequacy of notice.

Based on our review of the record before us, we hold that the district court erroneously found that neither the 1995 letter nor the 1996 letter effected actual notice under section 287(a), at least as to the products referenced in those letters. Moreover, because there is no dispute over the contents of the letters, as we will discuss below, we conclude that no reasonable jury could find that Gart failed to comply with section 287(a) as to the TRACKMAN VISTA products in the 1995 letter and as to the TRACKMAN MARBLE products in the 1996 letter.

The 1995 letter to Logitech included a specific reference to claims 7 and 8 of the '165 patent, specific reference to Logitech's selling of the TRACKMAN VISTA, and noted that Logitech "may wish to have [its] patent counsel examine the ... patent ... to determine whether a non-exclusive license under the patent is needed." The whole point of offering a license is to insulate a licensee from infringement charges by the licensor. *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 879, 219 USPQ 197, 202 (Fed.Cir.1983). Thus, from an objective standpoint, the clear inference from the 1995 letter's reference to specific claims of the patent, a specific product, and the suggestion that a license under the patent may be needed is that Gart believed the TRACKMAN VISTA infringed claims 7 and 8 of the '165 patent. Moreover, it would be rare indeed for a letter such as the 1995 letter not to be considered by its recipient as more than a "mere" invitation to determine for itself whether there was infringement. However, whether or not this letter also invited Logitech to study the patent and to determine for itself whether there might be an infringement of the '165 patent is irrelevant to the clear inference that Gart believed Logitech's VISTA infringed claims 7 and 8. Thus, we conclude that no reasonable jury could find that Logitech was not notified by the 1995 letter of the infringement of its TRACKMAN VISTA products because that letter reasonably suggests to Logitech that Gart believed the making and selling of the TRACKMAN VISTA infringed at least claims 7 and 8 of the '165 patent. The notice thus satisfies the conditions of section 287(a).

The 1996 letter included another copy of the '165 patent to Logitech and indicated that Logitech might find that patent "particularly interesting" relative to Logitech's TRACKMAN VISTA and TRACKMAN MARBLE products. Standing alone, this letter would not constitute effective actual notice because it does not reasonably convey that Gart believed Logitech was in-

fringing the '165 patent by making and selling the VISTA and MARBLE products. However, the 1996 letter was not the first communication between Gart and Logitech regarding the '165 patent claims. As we noted above, the 1995 letter reasonably establishes Gart's belief that Logitech's manufacture and sales of at least the VISTA computer controllers may infringe claims of the '165 patent. In view of these circumstances, we conclude that no reasonable jury could find that Logitech was not notified of the infringement of its TRACK-MAN MARBLE products, pursuant to section 287(a), by the 1996 letter because that letter in conjunction with the 1995 letter reasonably apprises Logitech that Gart believed that the making and selling of the MARBLE products infringed the '165 patent.

Consequently, we reverse the district court's finding that Gart did not effect actual notice of infringement of the TRACKMAN VISTA, MARBLE, MARBLE + and MARBLE FX to Logitech until January 30, 1997. We conclude that no reasonable jury could find that Logitech was not "notified of infringement pursuant to section 287(a)" as to its TRACKMAN VISTA product as of April 5, 1995, and as to its TRACKMAN MARBLE, MARBLE +, and MARBLE FX products as of September 4, 1996. However, the district court's finding that Gart did not effect actual notice of infringement of the TRACKMAN MOUSEMAN and MOUSE-MAN + until Gart filed its complaint on July 23, 1998 is affirmed.

### CONCLUSION

For the reasons set forth above, we vacate the district court's grant of summary judgment in favor of Logitech as to no infringement of claim 7, either literally or under the doctrine of equivalents, and remand for a determination of infringement based on the claim as construed herein. Moreover, we reverse the district

court's grant of summary judgment in favor of Logitech as to the limitation of damages regarding Logitech's TRACK-MAN VISTA, MARBLE, MARBLE +, and MARBLE FX products. However, we affirm the district court's grant of summary judgment in favor of Logitech as to the limitation of damages regarding Logitech's TRACKMAN MOUSEMAN and MOUSEMAN + products.

AFFIRMED–IN–PART, VACATED–IN–PART, REVERSED–IN–PART, AND REMANDED

### COSTS

Each party shall bear its own costs.