**284**

**RICHARD GREEN (FINE PAINTINGS),**
Plaintiff,

v.

**Doyle McCLENDON and Mary Alice McClendon, Defendants.**

No. 08 Civ. 8496(JGK)(JCF).

United States District Court,
S.D. New York.

Aug. 13, 2009.

John Robert Cahill, Lynn & Cahill, LLP, New York, NY, Ronald Wolf Adelman, Robert S. Meloni, P.C., New York, NY, for Plaintiff.

C Bryant Boydstun, Jr., Fisher & Sauls, P.A., pro hac vice, St. Petersburg, FL, Robert Jason Shapiro, The Shapiro Law Firm, LLP, New York, NY, for Defendant Doyle McClendon.

J. Carter Andersen, Bush Ross, P.A., Tampa, FL, Karen S. Cox, Bush Ross, P.A., pro hac vice, Tampa, FL, for Defendant Mary Alice McClendon.

### MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate Judge.

This case concerns a painting that the defendants allegedly agreed to purchase from the plaintiff for $4.2 million (the "Work"). The plaintiff, Richard Green (Fine Paintings) ("Richard Green"), now moves pursuant to Rule 37 of the Federal Rules of Civil Procedure for sanctions against defendant Mary Alice McClendon and her counsel in connection with the failure to preserve and produce certain electronically-stored documents. For the reasons that follow, the plaintiff's motion is granted in part and denied in part.

*Background*

#### A. *Factual Background*

In May 2007, the plaintiff, a London-based art gallery and dealer, displayed artwork for sale at the annual International Fine Art Fair at the Park Avenue Armory in Manhattan. (Second Amended Complaint ("SAC"), ¶¶ 8, 10). The defendants attended the fair and, while there, negotiated a purchase price of $4.2 million for the Work. (SAC, ¶¶ 10–12; Deposition of Mary Alice McClendon dated April 2, 2009 ("McClendon Dep.") at 5–11, 151–52). The parties agreed that the defendants would make an initial payment of $500,000, and would satisfy the remaining balance by May 12, 2008. (SAC, ¶¶ 12, 17; McClendon Dep. at 9–11, 151–52). The Work remained in the possession of the Richard Green gallery pending full payment. (McClendon Dep. at 9–11).

On July 18, 2007, Mr. and Mrs. McClendon paid $500,000 to the plaintiff. (SAC, ¶ 15 & Exh. B). At some point thereafter, the McClendons began to experience marital problems, ultimately separating in anticipation of divorce.[1] In May 2008, Mrs. McClendon attended the Fine Arts Fair once again, this time to request an extension of time to pay for the Work because of her separation from her husband and other changed circumstances.[2] (SAC, ¶ 17; McClendon Dep. at 161–62, 171–72). Richard Green agreed that the defendants could have until July 31, 2008 to satisfy the balance. (SAC, ¶ 18 & Exh. D).

The defendants never paid the remaining $3.7 million. Accordingly, they also never took possession of the Work. The defendants deny that they entered into a binding contract to purchase the Work, pointing out that the parties never executed a written agreement. (Defendant Mary Alice McClendon's Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum of Law in Support Thereof at 6–17). In addition, they contend that the $500,000 payment was actually a refundable deposit. (Declaration of John R. Cahill dated March 13, 2009 ("Cahill 3/13/09 Decl."), ¶ 3).

#### B. *Procedural Background*

The plaintiff filed suit on October 3, 2008, asserting claims for breach of contract and promissory estoppel. The parties exchanged initial disclosures in early December, and the plaintiff served its first document request on Mrs. McClendon on December 23, 2008. (Declaration of John R. Cahill dated July 7, 2009 ("Cahill 7/7/09 Decl."), ¶¶ 4–5 & Exhs. A, C). Among other items, the plaintiff requested all documents "concerning the

---

1. Their divorce was finalized in January 2009. (McClendon Dep. at 141).

2. The parties had consistent contact throughout the remainder of 2007 and in early 2008 concerning the Work and other paintings. The details of their communications, although relevant to the underlying suit, are not important for purposes of determining the instant motion and are thus not described in this opinion.

Work" and "concerning Green or transactions with Green" from January 1, 2007 onward. (Plaintiff's First Set of Requests for the Production of Documents ("Pl. Requests"), attached as Exh. A to Cahill 7/7/09 Decl., at 2–4). The request explicitly incorporated Local Civil Rule 26.3, which defines the term "document" to include "electronic or computerized data compilations." (Pl. Requests at 1). In a response dated February 17, 2009, Mrs. McClendon stated that she had produced all responsive, non-privileged documents in her possession. (Defendant Mary Alice McClendon's Responses to Plaintiff's First Set of Requests for the Production of Documents, attached as Exh. B to Cahill 7/7/09 Decl., at 3–4).

In February and March of 2009, counsel for the plaintiff and counsel for Mrs. McClendon exchanged several letters and e-mails concerning the plaintiff's discovery requests. (Letter of Ronald W. Adelman dated Feb. 26, 2009, attached as Exh. F to Cahill 7/7/09 Decl.; E-mail of Carter Andersen dated March 12, 2009, attached as Exh. G to Cahill 7/7/09 Decl.; E-mail of Carter Andersen dated March 13, 2009, attached as Exh. H to Cahill 7/7/09 Decl.). Mrs. McClendon and her counsel repeatedly represented that they had conducted thorough searches for responsive documents and had produced everything in Mrs. McClendon's possession. On March 16, 2009, the plaintiff filed a motion to compel the production of certain documents, including documents concerning other art transactions and any non-privileged communications with third parties concerning the Work. (Cahill 3/13/09, ¶¶ 7–14). On April 2, 2009, I ordered the defendants to produce all documents relating to the Work as well as certain information concerning other artworks. (Order dated April 2, 2009, ¶¶ 1, 4). The defendants were also ordered to certify the completeness of their responses. (Order dated April 2, 2009, ¶ 6).

On April 24, 2009, Mrs. McClendon produced a two-page, undated Excel spreadsheet titled "Fine Art, Miscellaneous Galleries" from her home computer files. (Cahill 7/7/09 Decl., ¶ 10 & Exh. L). The spreadsheet provides information about thirty-seven artworks,[3] including the Work. The plaintiff then requested additional information about the spreadsheet, specifically seeking the date it was created, dates it was modified, and the name of anyone involved with creating or modifying it. (Cahill 7/7/09 Decl., ¶¶ 13–19 & Exhs. M, N, P, S).

Thereafter, on June 9, 2009, Mrs. McClendon's counsel provided what appear to be three additional electronic versions of the spreadsheet with partial electronic history for each.[4] (Cahill 7/7/09 Decl., ¶ 20 & Exhs. T, U; Declaration of Michelle R. Drab filed July 17, 2009 ("Drab Decl."), ¶¶ 2–6). There are some clear differences between the initial spreadsheet provided to the plaintiff in hardcopy form and the additional electronic versions. Most notably, the former lists a purchase price of $4.2 million for the Work whereas the additional versions show no price. In addition, although counsel explained that the spreadsheet was created by an individual hired by the McClendons to organize their art files, no further information about the spreadsheet's creator has been provided. (Cahill 7/7/09 Decl., ¶¶ 15, 18 & Exhs. O, R).

The plaintiff subsequently filed the instant motion, seeking an order authorizing a forensic examination of Mrs. McClendon's computer and appropriate sanctions. When Mrs. McClendon responded, however, she disclosed a fact that was previously unknown to the plaintiff and to the Court: in January 2009, "the son of a friend" who is "familiar with computers" reinstalled the operating system on Mrs. McClendon's computer. (Declaration of Mary Alice McClendon dated July 17, 2009 ("McClendon Decl."), ¶¶ 2–3; Declaration of Jordan Chapman dated July

---

**3.** The spreadsheet reflects the name and artist of most artworks listed, and includes columns noting each item's retail price, purchase price, invoice number, value, and whether it came with a bill of sale or a guarantee. (Fine Art, Miscellaneous Galleries Spreadsheet ("Spreadsheet"), attached as Exh. L to Cahill 7/7/09 Decl.).

**4.** The electronic history was obtained by counsels' inspection of the documents rather than by an expert's inspection of Mrs. McClendon's computer's hard drive. (E-mail of Michelle Drab dated June 10, 2009, attached as Exh. U to Cahill 7/7/09 Decl.).

17, 2009 ("Chapman Decl."), ¶¶ 3–4). During this process, all of her files were transferred from her hard drive onto four compact discs ("CDs") (McClendon Decl., ¶ 3; Chapman Decl., ¶ 4), so her computer no longer contains the original version of any of the information that was stored there prior to the reinstallation process. (Declaration of Matthew J. Decker dated July 17, 2009 ("Decker Decl."), ¶¶ 4–6). Apparently, Mrs. McClendon's counsel did not obtain these CDs until April 2009, and did not review them until June. (McClendon Decl., ¶ 4; Drab Decl., ¶¶ 2–3).

In light of this new information, the plaintiff now withdraws its request for a forensic examination of Mrs. McClendon's computer, contending that such a search would be a "useless exercise." [5] (Plaintiff's Reply Memorandum of Law in Support of Motion for Discovery Order and Sanctions ("Pl. Reply") at 1). The plaintiff still seeks sanctions, however, arguing that Mrs. McClendon and her counsel breached their discovery obligations, resulting in the untimely production of responsive documents and the loss of electronically-stored information. Specifically, the plaintiff requests (1) additional time to depose Mrs. McClendon about the spreadsheet and other electronically-stored documents, at her expense, (2) an order directing the defendant to identify the person who created the spreadsheet, (3) payment of costs incurred by the plaintiff in bringing this motion, including attorneys' fees, and (4) an adverse inference that the McClendons understood that they had in fact purchased the Work and added it to their personal collection.

*Discussion*

A. *Legal Standard*

■■■ Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Board of Education*, 243 F.3d 93, 107 (2d Cir.2001) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.

1999)). A court's authority to impose sanctions in response to spoliation derives from at least two sources. Where a party violates a court order—either by destroying evidence when directed to preserve it or by failing to produce information because relevant data has been destroyed—Rule 37(b) of the Federal Rules of Civil Procedure provides that the court may impose a range of sanctions, including dismissal or judgment by default, preclusion of evidence, imposition of an adverse inference, or assessment of attorneys' fees and costs. Fed.R.Civ.P. 37(b); *see Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 106–07 (2d Cir.2002); *Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees and Restaurant Employees International Union*, 212 F.R.D. 178, 219–20 (S.D.N.Y.2003). In addition, "[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding*, 306 F.3d at 106–07 (citations omitted); *accord West*, 167 F.3d at 779. Sanctions may be imposed "on an attorney, a party, or both." *Metropolitan Opera*, 212 F.R.D. at 220.

■■■ "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y.2004) ("*Zubulake V*") (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir.2001)). As a general matter, however, the severity of the sanctions imposed should be congruent with the destroyer's degree of culpability. *See Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d 124, 139–40 (S.D.N.Y.2009); *Reino De Espana v. American Bureau of Shipping*, No. 03 Civ. 3573, 2007 WL 1686327, at *3 (S.D.N.Y. June 6, 2007); *Chan v. Triple 8 Palace, Inc.*, No. 03 Civ. 6048, 2005 WL 1925579 at *6 (S.D.N.Y. Aug. 11, 2005); *see also Metropolitan Opera*, 212 F.R.D. at 219 ("In Rule 37 cases, intentional behavior, ac-

---

**5.** Indeed, Mrs. McClendon hired a professional to search her computer hard drive for relevant documents in April 2009. (McClendon Decl., ¶ 5). Predictably, this search yielded no relevant

results. (Decker Decl., ¶¶ 4–6). Moreover, there was no trace of the spreadsheet. (Decker Decl., ¶ 6).

tions taken in bad faith, or grossly negligent behavior justify severe disciplinary measures."). Moreover, any "applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West*, 167 F.3d at 779; *accord Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998).

### B. *Plaintiff's Motion*

#### 1. *Adverse Inference*

■ It is well established that a party seeking an adverse inference instruction based on the spoliation of evidence must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding*, 306 F.3d at 107; *accord ACORN (New York Association of Community Organizations for Reform Now) v. County of Nassau*, No. 05 CV 2301, 2009 WL 605859, at *2 (E.D.N.Y. March 9, 2009); *Zubulake V*, 229 F.R.D. at 430. Accordingly, each of these requirements is examined below.

#### a. *The Obligation to Preserve Evidence*

■ In general, "[t]he obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003) (*"Zubulake IV"*); *accord Fujitsu*, 247 F.3d at 436. The duty to preserve attaches at the time that litigation is reasonably anticipated. *Zubulake IV*, 220 F.R.D. at 217. Although this commonly occurs at the time a complaint is filed, *see Kronisch*, 150 F.3d at 126, it can also arise earlier, for instance when a disgruntled employee files an EEOC charge or at the point where relevant individuals anticipate becoming parties in imminent litigation. *See Zubulake IV*, 220 F.R.D. at 216–17.

■ When the duty to preserve attaches, a litigant "must suspend [her] routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake V*, 229 F.R.D. at 431. This step, however, is only the beginning of a party's discovery obligations. *Id.* at 432. "Once a 'litigation hold' is in place, a party and her counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold' ...." *Id.* Then, "[c]ounsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." *Id.* Thereafter, the duty to preserve discoverable information persists throughout the discovery process; a litigant must ensure that all potentially relevant evidence is retained. *Id.* at 433; *see also* Fed. R.Civ.P. 26(e).

■ Here, there is no question that Mrs. McClendon had an obligation to preserve all documents stored on her computer's hard drive concerning the Work or the plaintiff, including the spreadsheet. This duty arose no later than October 3, 2008, when this lawsuit was filed; at that point, the defendant should have known that such information would be relevant or could lead to the discovery of admissible evidence. *See Arista Records*, 633 F.Supp.2d at 139–40 ("There can be no dispute that the Defendants were under an obligation to preserve all documents and communications stored on their ... computers, at least as early as the start of this litigation."); *see also Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y.1991) ("[O]nce a complaint is filed, [a litigant] is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, [and] is reasonably likely to be requested during discovery ..." (citation omitted)). Moreover, the plaintiff's first document request, served on December 23, 2008, explicitly requested all documents "concerning the Work" and "concerning Green or transactions with Green" from January 1, 2007 onward (Pl. Requests at 3–

4), thereby re-emphasizing the defendant's discovery responsibilities. There is thus no question that Mrs. McClendon was obligated to preserve the electronically-stored documents at issue.

#### b. *Culpability*

■■■ "The preservation obligation runs first to counsel, who has 'a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'" *In re NTL, Inc. Securities Litigation,* 244 F.R.D. 179, 197–98 (S.D.N.Y.2007) (quoting *Chan,* 2005 WL 1925579, at *6); *see also Fayemi v. Hambrecht and Quist, Inc.,* 174 F.R.D. 319, 326 (S.D.N.Y.1997). Moreover, this responsibility is "heightened in this age of electronic discovery." *Qualcomm Inc. v. Broadcom Corp.,* 05 Civ.1958–B, 2008 WL 66932, at *9 (S.D.Cal. Jan.7, 2008), *vacated in part on other grounds,* 2008 WL 638108 (S.D.Cal. March 5, 2008). Indeed,

> for the current 'good faith' discovery system to function in the electronic age, attorneys and clients must work together to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review, and produce responsive documents. Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search.

*Id.; see also Phoenix Four, Inc. v. Strategic Resources Corp.,* No. 05 Civ. 4837, 2006 WL 1409413, at *5–6 (S.D.N.Y. May 23, 2006) (emphasizing counsels' affirmative duty to search for sources of electronic information); *Zubulake V,* 229 F.R.D. at 433 (implying that "active supervision of counsel" is of particular importance when electronically-stored information is involved).

There is no question that Mrs. McClendon's counsel failed to meet these discovery obligations. Unless Mrs. McClendon brazenly ignored her attorney's instructions, counsel apparently neglected to explain to her what types of information would be relevant and failed to institute a litigation hold to protect relevant information from destruction. Moreover, despite numerous represen-

tations to the contrary, it is highly unlikely that counsel actually conducted a thorough search for relevant documents in Mrs. McClendon's possession in connection with their initial disclosure duties or in response to the plaintiff's first document request. If that had been done, counsel certainly would have found the spreadsheet from Mrs. McClendon's personal computer files. As one court has aptly stated,

> The client is charged with knowledge of what documents it possesses.... [The defendant's counsel cannot] simply react to plaintiff's fortuitous discovery of the existence of relevant documents by making disjointed searches, each time coming up with a few more documents, and each time representing that was all they had. Under the federal rules, the burden does not fall on plaintiff to learn whether, how and where defendant keeps relevant documents.

*Tarlton v. Cumberland County Correctional Facility,* 192 F.R.D. 165, 170 (D.N.J.2000); *see also Metropolitan Opera,* 212 F.R.D. at 221 (quoting *Tarlton* ).

In addition, there is no justifying the delay in providing relevant documents to the plaintiff once counsel received the CDs containing Mrs. McClendon's computer files in April 2009. (McClendon Decl., ¶ 4). In violation of the obligation to supplement discovery pursuant to Rule 26(e), counsel waited until the plaintiff specifically demanded additional information about the spreadsheet and other electronically-stored documents before searching the files that were, by then, in counsel's possession. (Cahill 7/7/09 Decl., ¶¶ 14–20 & Exhs. M, N, P, S, T; Drab Decl., ¶¶ 3–4).

■■■■ In this circuit, a "culpable state of mind" for purposes of a spoliation inference includes ordinary negligence. *Residential Funding,* 306 F.3d at 108. Here, Mrs. McClendon and her counsel were at least negligent in failing to implement a litigation hold, properly search for responsive documents, and supplement discovery responses in a timely and thorough manner. Indeed, the failure to implement a litigation hold is, by itself, considered grossly negligent behav-

ior. *See Toussie v. County of Suffolk*, No. 01 CV 6716, 2007 WL 4565160, at *8 (E.D.N.Y. Dec. 21, 2007) ("The law is very clear that the failure to implement a litigation hold at the outset of litigation amounts to gross negligence."); *Chan*, 2005 WL 1925579, at *7 ("[T]he utter failure to establish any form of litigation hold at the outset of litigation is grossly negligent."). Thus, the plaintiff has clearly satisfied its burden with respect to the second prong of the spoliation test.

### c. *Relevance*

■■■■■■ When evidence is destroyed in bad faith, that fact alone is sufficient to support an inference that the missing evidence would have been favorable to the party seeking sanctions, and therefore relevant. *Residential Funding*, 306 F.3d at 109 ("[B]ad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party."). By contrast, when the destruction is negligent or reckless, relevance must be proven by the party seeking the sanctions. *Zubulake IV*, 220 F.R.D. at 221.[6] As the Second Circuit has explained in connection with an application for an adverse inference,

> "[R]elevant" in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction.

*Residential Funding*, 306 F.3d at 108–09 (quotation marks, citations, and alterations omitted). "In other words, the plaintiffs here must present extrinsic evidence tending to show that the destroyed [documents] would have been favorable to their case." *Toussie*, 2007 WL 4565160, at *8; *see also*

*Chan*, 2005 WL 1925579, at *8; *Zubulake IV*, 220 F.R.D. at 221; *Turner*, 142 F.R.D. at 77.

■■■ Here, as a result of the defendant's negligence, the electronic record of the spreadsheet originally produced to the plaintiff in hard-copy form has been eliminated. And, in the process of reinstalling her computer's operating system, Mrs. McClendon may have lost other responsive documents. There is no evidence, however, that any destroyed documents would have been unfavorable to Mrs. McClendon. In fact, it is uncertain whether the plaintiff has actually been deprived of any information, since all of the files previously contained on Mrs. McClendon's hard drive were purportedly transferred to the CDs that are now in counsel's possession.

Under these circumstances, without some proof that the defendant's actions created an unfair evidentiary imbalance, an adverse inference is not appropriate. The plaintiff, is not, however, foreclosed from renewing its request if warranted by the subsequent discovery of additional evidence. Indeed, if it becomes apparent that relevant information was in fact destroyed, or that the defendant acted in bad faith, an adverse inference may be warranted.

### 2. *Other Sanctions*

Although an adverse inference is not justified at this time, other measures to remedy the defendant's deficient preservation efforts are appropriate. *See, e.g., West*, 167 F.3d at 780 (finding dismissal inappropriate sanction for spoliation, but endorsing alternative sanctions); *ACORN*, 2009 WL 605859, at *6–7 (denying request for adverse inference, but awarding costs to moving party); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 123–24 (S.D.N.Y.2008) (finding adverse inference unjustified, but ordering additional discovery, including forensic search of adversary's computer); *Toussie*, 2007 WL 4565160, at *9–10 (finding adverse inference not warranted, but

---

**6.** While it is true that under certain circumstances "a showing of gross negligence in the destruction or untimely production of evidence" will support the same inference, *Residential Funding*, 306 F.3d at 109 (citing *Reilly v. Nat-West Markets Group Inc.*, 181 F.3d 253, 267–68 (2d Cir.1999)), the circumstances here do not

warrant such a finding because the defendant's conduct "does not rise to the egregious level seen in cases where relevance is determined as a matter of law." *Toussie*, 2007 WL 4565160, at *8 (declining to award adverse inference even though defendant failed to implement litigation hold and its "foot dragging" delayed litigation).

awarding costs to moving party); *Great Northern Insurance Co. v. Power Cooling, Inc.*, No. 06 CV 874, 2007 WL 2687666, at *12–14 (E.D.N.Y. Sept. 10, 2007) (finding adverse inference unjustified, but precluding certain evidence from being introduced at trial); *Phoenix Four*, 2006 WL 1409413, at *9 (imposing monetary sanctions for spoliation and other discovery misconduct after denying other requested relief). As noted above, a court "must determine the appropriate sanction based on the relative fault of the party against whom sanctions are sought and the prejudice suffered by the party seeking sanctions." *Klezmer v. Buynak*, 227 F.R.D. 43, 51 (E.D.N.Y.2005). Moreover, "[t]rial judges should have the leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing—a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case." *Reilly*, 181 F.3d at 267; *see also Fujitsu*, 247 F.3d at 436 (reiterating Second Circuit's "case-by-case approach to the failure to produce relevant evidence" in determining sanctions).

▇▇▇ In this case, the other sanctions requested by the plaintiff are wholly appropriate. Authorizing further discovery concerning the spreadsheet and other electronically-stored documents will allow the plaintiff the chance to determine whether it is in fact missing relevant evidence. *See Treppel*, 249 F.R.D. at 123–24; *In re NTL, Inc. Securities Litigation*, 244 F.R.D. at 201. Time shall therefore be allotted for further deposition of Mrs. McClendon. In addition, the defendant shall identify any person who created or modified the spreadsheet, and the plaintiff may take discovery of any such person.

The plaintiff is also entitled to an award of costs, including attorneys' fees. Monetary sanctions are appropriate "to punish the offending party for its actions [and] to deter the litigant's conduct, sending the message that egregious conduct will not be tolerated." *In re WRT Energy Securities Litigation*, 246 F.R.D. 185, 201 (S.D.N.Y.2007) (alterations, citation and quotation marks omitted). Furthermore, such an award serves the remedial purpose of compensating the plaintiff for the reasonable costs it incurred in bringing this motion. *See id.; Turner*, 142 F.R.D. at 77–78.

Questions remain, however, concerning the amount of the award and the manner in which liability should be allocated between Mrs. McClendon and her counsel. The first issue is easily resolved: following completion of the additional discovery authorized by this order, plaintiff's counsel shall submit a fee application to me for determination. The second issue is more complicated. The present record gives little insight into the precise circumstances under which electronic information was destroyed; similarly, there is no explanation of how or why other discovery breaches occurred. As the respective blameworthiness of Mrs. McClendon and her counsel cannot presently be ascertained, it is uncertain how payment of the plaintiff's award should be allocated between them. *See, e.g., Phoenix Four*, 2006 WL 1409413, at *9 (determining that costs should be borne by certain defendants and their counsel equally). Accordingly, after the amount of the plaintiff's award has been decided, I shall afford the defendant and her attorney the opportunity to either agree on an appropriate allocation or present this issue to me for determination.

*Conclusion*

In sum, the plaintiff's motion is granted in part and denied in part. The request for an adverse inference is denied without prejudice to renewal if warranted by the discovery of additional evidence. Mrs. McClendon shall be made available for further deposition, and she shall identify any person who created or modified the spreadsheet, from whom discovery may also be taken. Following completion of this discovery, the plaintiff may submit a fee application, and the allocation of liability for fees as between Mrs. McClendon and her attorney will be decided.

SO ORDERED.