**COGNEX CORPORATION; Cognex Technology & Investment LLC, Plaintiffs,**

v.

**MICROSCAN SYSTEMS, INC.; The Code Corporation, Defendants.**

No. 13 Civ.2027(JSR).

United States District Court, S.D. New York.

Dec. 31, 2013.

Christopher M. Scott, Holland & Knight LLP, New York, NY, Jacob Kevin Baron, Joshua Krumholz, Zachary A. Weinman, Holland & Knight, LLP, Boston, MA, for Plaintiffs.

Colin James Garry, Sidley Austin LLP, New York, NY, Eligio Pimentel, Stephen Wurth, Steven John Hampton, McAndrews, Held & Malloy Ltd., Chicago, IL, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiffs Cognex Corporation and Cognex Technology & Investment, LLC (collectively, "Cognex") sue defendants Microscan Systems, Inc. and The Code Corporation for patent infringement. Cognex alleges that Microscan's Mobile Hawk Direct Part Mark Reader product, which is designed and sold by the defendants, infringes U.S. Patent No. 7,874,-487 (the "'487 patent"). As a result of plaintiffs' decisions to drop certain claims and the Court's September 30, 2013, 2013 WL 5550092, Order granting defendants partial summary judgment as to claims 23, 28, and 29 on the issue of invalidity, plaintiffs' only remaining allegations of infringement pertain to claims 1 and 30 of the '487 patent.

Pending before the Court are six motions: (1) plaintiffs' motion seeking partial summary judgment that claims 1 and 30 of the '487 patent are not invalid as anticipated; (2) defendants' responding motion seeking summary judgment that claims 1 and 30 of the '487 patent are invalid as anticipated; (3) defendants' motion seeking summary judgment that the Mobile Hawk device does not infringe the '487 patent; (4) defendants' motion seeking partial summary judgment that the plaintiffs are not entitled to damages prior to when they provided actual notice of infringement; (5) plaintiffs' motion to strike defendants' fourth affirmative defenses in their Amended Answers to the Plaintiffs' Amended Complaint; and (6) defendants' motion for sanctions for spoliation. On October 21, 2013, following full briefing, the Court heard oral argument on all of the motions except the fourth, as to which the parties rested on their papers.

Before discussing each motion, the Court provides some background on plaintiffs' patent in suit, the accused Mobile Hawk product, and the prior art HawkEye technologies.

The '487 patent relates to illumination systems used in handheld symbology readers that read barcodes and other more complicated symbols appearing on objects. These systems use multiple types of illumination to help the symbology readers view the target symbols and objects more clearly. Specifically, the '487 patent produces illumination from two sources: (1) light-emitting diodes ("LEDs") that transmit refracted and reflected light through a light pipe, and (2) LEDs that produce diffuse light when deployed with a reflector and diffuser.

The product accused of infringing the '487 patent is the defendants' Mobile Hawk product, which is a handheld direct part mark reader. *See* Defendants' Local Rule 56.1 Statement in Support of Defendants' Motion for Summary Judgment that the Accused Mobile Hawk Device Does Not Infringe Any Asserted Claim of U.S. Patent No. 7,874,487, Sept. 20, 2013, ¶ 14 (undisputed). There is no dispute concerning the structure of the Mobile Hawk device nor is there a dispute about the shape or dimensions of its prism.[1] The accused Mobile Hawk device acquires a two-dimensional digital image of a mark, processes the image to identify the mark, and then communicates the decoded information from the mark through a data communication interface system, such as through a USB connection. *Id.* ¶ 15 (undisputed). The acquisition of the image is accomplished with an illumination assembly, which includes a dome, a prism, and a window component. *Id.* ¶ 16. The Mobile Hawk illumination assembly provides dark

field illumination by reflecting light out of the prism that surrounds the window. *Id.* ¶ 18. Bright field illumination is created by light that is refracted out of the prism and by light that is reflected by the dome through the window. *Id.* ¶¶ 21–22. This illumination assembly is the portion of the Mobile Hawk that is accused of infringing the '487 patent.

Defendants for their part assert that a series of products (collectively known as "the HawkEye") anticipates claims 1 and 30 of the '487 patent. *See* Plaintiffs' Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment of No Invalidity over the HawkEye ("Pl. 56.1 in Supp. of No Invalidity"), Sept. 20, 2013, ¶ 17 (undisputed). The HawkEye was a series of handheld imager-based direct part mark reader products designed, developed, produced, marketed, and sold by Auto Image ID, Inc. from 2000 to 2001, by Robotic Vision Systems, Inc. from 2001 through 2005, and by others, including Microscan, since then. *Id.* ¶ 18.[2] The HawkEye 5x device was a handheld device designed to read a wide range of direct part marks and other symbology codes. It included image processing algorithms and illumination technology.

Each HawkEye could be used with two types of light pipes. One light pipe, which included an end that was chamfered at ten degrees, was designed to provide bright field illumination. *See* Defendants' Local Rule L.R. 56.1 Statement in Support of Defendants' Motion for Summary Judgment that Claims 1 and 30 of U.S. Patent

---

1. Cognex only disputes any suggestion that Microscan's "prism" is not a light pipe. *See* Cognex's Statement of Material Facts Submitted in Opposition to Defendants' Motion for Summary Judgment that the Accused Mobile Hawk Device Does Not Infringe Any Asserted Claims, Oct. 4, 2013, ¶¶ 16, 18, 21.

2. While defendants dispute plaintiffs' description of the HawkEye, their preferred description does not materially differ for purposes of the instant motions. *See* Defendants' Local Rule 56.1 Statement in Support of Defendants' Opposition to Plaintiffs' Motion for Summary Judgment of No Invalidity over the HawkEye, Oct. 4, 2013, ¶ 18.

No. 7,874,487 Are Invalid as Anticipated by the HawkEye 5x Handheld Readers, Sept. 20, 2013, ¶ 28 (undisputed). The other light pipe, which included an end that was chamfered at thirty degrees, was used to provide dark field illumination. *Id.* ¶ 26–27 (undisputed). The parties dispute whether the thirty-degree light pipe was also able to provide bright field illumination. *Compare id.* at ¶ 27, *with* Cognex's Statement of Material Facts Submitted in Opposition to Defendants' Motion for Summary Judgment that Claims 1 and 30 of U.S. Patent No. 7,874,487 Are Invalid as Anticipated by the HawkEye 5x, Oct. 4, 2013, ¶ 27.

Turning to the instant motions, after careful consideration of the parties' briefing and arguments, the Court reaches the following conclusions:

First, the Court denies both plaintiffs' and defendants' motions for summary judgment on the issue of invalidity because a genuine dispute exists as to whether the HawkEye has a diffusive distal chamfered surface.

■ Each claim of a patent is entitled to a presumption of validity. 35 U.S.C. § 282(a). A defendant asserting that a claim is invalid carries the burden of establishing the invalidity of the claim by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship,* —— U.S. ——, 131 S.Ct. 2238, 2245–46, 180 L.Ed.2d 131 (2011). A determination that a patent is invalid as anticipated requires a finding that each and every claim element is disclosed in a single prior art reference. *Therasense, Inc. v. Becton, Dickinson & Co.,* 593 F.3d 1325, 1332–33 (Fed.Cir.2010). "A determination that a claim is anticipated involves a two-step analysis: the first step requires construing the claim, and the second step in the analysis requires a comparison of the properly construed claim to the prior art." *Enzo Biochem, Inc. v.*

*Applera Corp.,* 599 F.3d 1325, 1332 (Fed. Cir.2010) (internal quotation marks and alterations omitted).

■ In the invalidity inquiry, uncorroborated oral testimony of the allegedly anticipating public use is "insufficient as a matter of law to establish invalidity of the patent." *Finnigan Corp. v. Int'l Trade Comm'n,* 180 F.3d 1354, 1370 (Fed.Cir. 1999). "[T]he need for corroboration exists regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation (*e.g.,* because that party is the accused infringer) or is uninterested but testifying on behalf of an interested party." *Id.* at 1367.

■ Whether an anticipation assertion through testimony "has been sufficiently corroborated, either by documentary or testimonial evidence, is generally measured under a rule of reason standard." *Lacks Indus. Inc. v. McKechnie Vehicle Components USA, Inc.,* 322 F.3d 1335, 1349 (Fed.Cir.2003) (internal quotation marks omitted). In evaluating such evidence, the court uses the factors identified by the Federal Circuit in *Woodland Trust v. Flowertree Nursery, Inc.:*

(1) the relationship between the corroborating witness and the alleged prior user,

(2) the time period between the event and trial,

(3) the interest of the corroborating witness in the subject matter in suit,

(4) contradiction or impeachment of the witness' testimony,

(5) the extent and details of the corroborating testimony,

(6) the witness' familiarity with the subject matter of the patented invention and the prior use,

(7) probability that a prior use could occur considering the state of the art at the time, [and]

(8) impact of the invention on the industry, and the commercial value of its practice.

148 F.3d 1368, 1371 (Fed.Cir.1998).

■ As noted, the parties cross-move for summary judgment on the issue of validity. Plaintiffs do not dispute that the HawkEye product is prior art to the '487 patent. *See* Cognex's Memorandum in Opposition to Defendants' Motion for Summary Judgment that Claims 1 and 30 of U.S. Patent No. 7,874,487 Are Invalid as Anticipated by the HawkEye 5x Handheld Readers, Oct. 4, 2013. However, plaintiffs contend that the HawkEye does not anticipate the claims here at issue because: (1) defendants should be precluded from arguing or offering any opinion that the Hawk-Eye invalidates the patent in suit because they failed to make a physical sample of the technology available for inspection until after both their own expert relied upon it in forming his opinions and Cognex's expert served his rebuttal expert report on validity, and (2) as matter of law, the bare, *uncorroborated opinion of defendants'* expert cannot not invalidate a claim as anticipated. Defendants counter that they have established, by clear and convincing evidence, that each and every element of claims 1 and 30 of the '487 patent is disclosed in the single prior art HawkEye technologies.

Even though defendants only produced a physical sample of the HawkEye product late in discovery, the Court finds that they are permitted to use the technology as a basis for their invalidity claims. Federal Rule 37 sanctions are not warranted here because plaintiffs' initial discovery request did not clearly cover production of the physical sample of the HawkEye. *See* Pl. 56.1 in Supp. of No Invalidity, ¶ 33. While plaintiffs cite case law in which a court applied Rule 37 sanctions to a party that withheld *both* documentary and physical evidence in response to a request for documents, *see Texas Instruments Inc. v. Powerchip Semiconductor Corp.*, 06 Civ. 2305, 2007 WL 1541010, at *13 (S.D.N.Y. May 24, 2007) (Ellis, Mag. J.), Cognex does not dispute that the defendants provided documents and photographs of the HawkEye product in response to the initial discovery request, *see, e.g.,* Cognex's Reply in Support of Its Motion for Summary Judgment of No Invalidity over the HawkEye, Oct. 11, 2013, at 3–7. Moreover, plaintiffs fail to cite any case law that supports the exclusion of this evidence based on defendants' failure to produce a physical sample after plaintiffs' expert David Bubnoski used such a sample in the creation of his expert report.[3]

The Court further finds that a genuine dispute exists as to whether the HawkEye has a diffusive distal chamfered surface. Defendants bear the burden to prove invalidity by clear and convincing evidence, and they offer evidence that supports an inference that the prior art HawkEye had a diffusive distal chamfered surface. Defendants' expert David Bubnoski asserts that the HawkEye has such a surface. *See* Declaration of David P. Bubnoski ("Bubnoski Decl."), Sept. 20, 2013, ¶¶ 30–34. In addition, recognizing that an expert's uncorroborated testimony cannot serve as the sole basis for an invalidity determina-

---

**3.** Neither case that plaintiffs cite in support of their position suggests that a party's expert is required to produce all information on which he relied without a prior request from that party's adversary. *See Sandata Techs., Inc. v. Infocrossing, Inc.,* 69 Fed.R.Serv.3d 776, 2007 WL 4157163, at *12 n. 14 (S.D.N.Y.2007) (Katz, Mag. J.); *Marathon Petroleum Co. LP v. Midwest Marine, Inc.,* No. 09–13804, 2012 WL 6632474, *5 (E.D.Mich. Dec. 17, 2012).

tion, *see Finnigan Corp. v. Int'l Trade Comm'n,* 180 F.3d 1354, 1370 (Fed.Cir. 1999), defendants present two other pieces of evidence to corroborate the expert opinion. First, defendants offer photographs that allegedly show that one version of the HawkEye had a polished surface, while another had a diffusive one. *See* Bubnoski Decl., Ex. A, at 2, 4. The photographs in the record are quite grainy, and the Court cannot readily ascertain a meaningful distinction between the two photographs. Still, a reasonable juror might be able to conclude that the HawkEye had a diffusive distal surface texture based on the photographs, which would corroborate Bubnoski's opinion. Second, defendants offer emails from Cognex employees who note that the HawkEye creates diffuse bright field illumination. *See* Declaration of Colin J. Garry in Support of Defendants' Motion for Summary Judgment that Claims 1 and 30 of U.S. Patent No. 7,874,487 Are Invalid as Anticipated by the HawkEye 5x Handheld Readers, Sept. 20, 2013, Ex. 2 (Email from Will Equitz, July 22, 2004); *id.,* Ex. 4 (Email from Will Equitz, July 23, 2004). While these emails do not explicitly state that the pipe's outer surface has a diffusive texture, a juror could reasonably infer from these emails that such a surface created the diffuse lighting. Since the Court must draw all reasonable inferences in favor of defendants on plaintiffs' motion for summary judgment, *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001), these emails also corroborate Bubnoski's expert report. Bubnoski's opinion and the related photographs and emails are collectively sufficient to require the Court to deny plaintiffs' motion for summary judgment finding no invalidity.

At the same time, plaintiffs offer evidence that draws into question whether the HawkEye actually had a diffusive distal chamfered surface. Plaintiffs provide four engineering part drawings of the HawkEye technology, which allegedly teach that the outer surface of the HawkEye's chamfered end was "polished." Declaration of Jacob K. Baron, Sept. 20, 2013, Ex. 2 (Supplemental Expert Report and Declaration of David P. Bubnoski, July 27, 2013), Ex. C. The Court agrees that, based on the drawings, a juror could reasonably conclude that the distal chamfered end of the HawkEye did not have a diffusive surface texture and that the patent in suit is valid, or that, at a minimum, defendants had not established invalidity to a clear and convincing standard, thus requiring the Court to deny defendants' motion for summary judgment finding invalidity.

■ Second, the Court denies defendants' motion for summary judgment on noninfringement because genuine disputes exist about whether the Mobile Hawk light prism is a "light pipe" and whether light transmitted through the prism is "internally reflected along the pipe."

■ "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1364 (Fed.Cir.2005). Plaintiffs bear the burden of proving infringement. *Lemelson v. United States,* 752 F.2d 1538, 1551 (Fed.Cir.1985).

In this case, defendants argue that the Mobile Hawk technology does not infringe claims 1 and 30 of the '487 patent for two reasons—first, that the Mobile Hawk does not have the claimed "light pipe," and second, that light is not "internally reflected along the pipe."

With respect to whether the Mobile Hawk has the claimed "light pipe," the most telling difference between the par-

ties' arguments is their choice of visuals to illustrate whether the HawkEye's "light prism" is actually a light pipe. The parties choose diagrams of the products at different angles to make their respective arguments. *Compare* Memorandum in Support of Defendants' Motion for Summary Judgment that the Accused Mobile Hawk Device Does Not Infringe Any Asserted Claim of U.S. Patent No. 7,874,487 ("Def. Mem. in Supp. of Noninfringement"), Sept. 20, 2013, at 2, *with* Cognex's Memorandum in Opposition to Defendants' Motion for Summary Judgment that the Accused Mobile Hawk Device Does Not Infringe Any Asserted Claim of U.S. Patent No. 7,874,- 487, Oct. 4, 2013, at 14. This very choice of differently angled diagrams—and the effect it could have on a reasonable juror— makes it clear that there is a genuine dispute that should be resolved by a jury as to whether the Mobile Hawk technology has a "light pipe."

Moreover, in arguing for summary judgment in their favor, defendants incorrectly impose a requirement that a light pipe be "elongated." *See, e.g.,* Def. Mem. in Supp. of Noninfringement, at 8. However, during claim construction, this Court construed the term "light pipe" to mean "a hollow cylinder or tube," and imposed no requirement that the pipe be "elongated." *See* Memorandum Order, Sept. 16, 2013, at 3, 2013 WL 5405562.

With respect to whether light is "internally reflected along the pipe," defendants rest their assertions primarily on their view that the Mobile Hawk's light prism is not a light pipe and that the light does not travel in the elongate direction of the prism. *See, e.g.,* Def. Mem. in Supp. of

Noninfringement, at 11–12. The Court cannot grant summary judgment based on these arguments because of its conclusions that genuine disputes exist as to whether the Mobile Hawk contains a light pipe and whether a light pipe must be elongated.[4]

Third, the Court grants defendants' motion for summary judgment determining that plaintiffs cannot collect damages incurred prior to actual notice of infringement, and denies plaintiffs leave to replead damages based on a constructive notice theory.

The patent statute requires that "[w]hen a patented article has been produced by a patentee or its licensee, the amount of damages the patentee can recover in an infringement suit is statutorily limited to those acts of infringement that occurred after the patentee gave the alleged infringer notice of infringement." *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1345 (Fed.Cir. 2001) (internal quotation marks omitted) (citing 35 U.S.C. § 287(a)). "The statute permits either constructive notice, which is accomplished by marking the article with the patent number, or actual notice." *Id.* Filing suit for infringement constitutes actual notice of infringement, 35 U.S.C. § 287(a), while compliance with the marking statute constitutes constructive notice, *see, e.g., Gart,* 254 F.3d at 1345. When a patent owner or licensee makes or sells a product that embodies at least one claim of a patent but does not mark that product as patented as required by Section 287(a), damages are limited to the period beginning when the patentee provides actual notice of infringement. *Id.*

▮ In an action for patent infringement, the patentee bears the "burden of

---

4. Defendants also moved for summary judgment that their products did not infringe under the doctrine of equivalents. Since defendants rely on similar evidence in arguing for noninfringement under the doctrine of equiv-

alents, *see, e.g.,* Def. Mem. in Supp. of Noninfringement, at 9–10, 13, the Court denies defendants' motion for summary judgment on those grounds as well.

pleading and proving at trial that she complied with the statutory requirements [of 35 U.S.C. Section 287(a) ]." *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed.Cir. 1996). Some courts have concluded that allegations of infringement prior to actual notice should be dismissed where the plaintiff fails to plead compliance with the marking statute. *See, e.g., Tech. Licensing Corp. v. Thomson, Inc.*, No. Civ. S–031329, 2005 WL 1562225, at *3 (E.D.Cal. June 30, 2005); *Jackson v. Intel Corp.*, No. 09 C 2178, 2009 WL 2851742, at *6 (N.D.Ill. Aug. 31, 2009).

■ Defendants contend that plaintiffs are entitled only to damages that occurred after plaintiffs provided actual notice of infringement because plaintiffs failed to plead compliance with the marking statute and also did not comply with the statute. Plaintiffs clearly did not plead compliance with the marking statute, instead including in their Amended Complaint only the date on which they provided defendants with actual notice. *See* First Amended Complaint and Jury Trial Demand, May 7, 2013, ¶ 14.

Therefore, the only open question is whether plaintiffs should be granted leave to replead. Under Rule 15, "the district court has the discretion to deny leave [to replead] if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir.2002). Moreover, "[a]lthough generally leave to file an amended pleading shall be freely given, the trial court is required to take into account any prejudice that might result to the party opposing the amendment." *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985) (internal quotation marks, citation, and alterations omitted).

Plaintiffs offer several reasons for why they should be permitted to replead a con-structive notice theory, but none is persuasive. Plaintiffs first argue that they only learned the facts necessary for a constructive notice theory during discovery. However, Microscan's conduct is irrelevant to the marking statute inquiry, *see Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed.Cir.1994), and plaintiffs therefore knew everything about their compliance with the marking statute when they filed their Amended Complaint.

In addition, plaintiffs argue that defendants have suffered no prejudice that would justify denying leave to replead. Defendants counter that permitting a constructive notice theory at this late stage of the case, well after the conclusion of discovery, would prejudice them since they crafted discovery around the actual notice theory pled in the Complaint. They point to a number of additional discovery requests they would have made—or would have pursued further—had they known that compliance with the marking statute would become a relevant issue. *See, e.g.,* Reply in Support of Defendants' Motion for Summary Judgment that the Plaintiffs Are Not Entitled to Damages Prior to Actual Notice of Infringement, Oct. 11, 2013, at 5–6. The Court agrees with defendants that, even if they had access to the product at issue already, they were prejudiced by plaintiffs' failure to raise this theory of relief until after discovery. As such, plaintiffs are permitted only to collect damages incurred after they provided defendants with actual notice of infringement.

Fourth, the Court denies plaintiffs' motion to strike defendants' fourth affirmative defenses, because defendants have pled sufficient facts with particularity from which intent to deceive the U.S. Patent and Trademark Office ("PTO") can be inferred.

Federal Rule of Civil Procedure 12(f) "provides that a 'court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Burck v. Mars, Inc.*, 571 F.Supp.2d 446, 456 (S.D.N.Y.2008) (quoting Fed.R.Civ.P. 12(f)). "It is well-established in this Circuit that '[a] motion to strike an affirmative defense under Rule 12(f) ... for legal insufficiency is not favored.'" *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y.1999) (quoting *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir.1984), vacated on other grounds, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986)). Moreover, "the standards for a Rule 12(b)(6) motion to dismiss ... apply to a motion to strike an affirmative defense pursuant to Rule 12(f)." *Burck*, 571 F.Supp.2d at 456.

█ "[T]o prevail on a motion to strike: (1) there may be no question of fact which might allow the defense to succeed; (2) there may be no substantial question of law, a resolution of which could allow the defense to succeed; and (3) the moving party must show that it is prejudiced by the inclusion of the defense." *Deere & Co. v. MTD Holdings, Inc.*, No. 00 Civ. 5936, 2004 WL 1794507, at *2 (S.D.N.Y. Aug. 11, 2004) (internal quotation marks omitted).

█ Inequitable conduct requires a finding of both intent to deceive and materiality, and *Therasense, Inc. v. Becton, Dickinson & Co.* raised the bar on what is required under each prong. *See* 649 F.3d 1276, 1287 (Fed.Cir.2011) (en banc). To satisfy the intent requirement after *Therasense*, a defendant must prove that an applicant misrepresented or omitted material information "with the specific intent to deceive the PTO." *Id.* at 1290. In the case of an omission, the applicant must have made a deliberate decision to withhold a known material reference. *Id.* "[T]he accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* Moreover, "[i]ntent cannot be inferred solely from materiality." *Avocent Redmond Corp. v. Raritan Americas, Inc.*, 921 F.Supp.2d 229, 243 (S.D.N.Y.2013).

█ In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R.Civ.P. 9(b). "[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity" under Rule 9(b). *Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed.Cir.2003). Further, the pleading must set forth "the who, what, when, where, and how of the alleged fraud." *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed.Cir. 2009) (internal quotation marks omitted). Under Rule 9(b), a defendant must also allege facts from which a court could infer that an individual involved with the prosecution of the patent in suit acted with the requisite scienter to deceive the PTO. *Id.* at 1327. Thus, the facts pled must allow the court to "reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material representation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29. The Federal Circuit has noted that "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense*, 649 F.3d at 1290.

■ Defendants' fourth affirmative defenses allege that the '487 patent is unenforceable because of plaintiffs' inequitable conduct. *See* Defendant Microscan Systems, Inc.'s Amended Answer to Plaintiffs' First Amended Complaint ("Microscan Amended Answer"), Aug. 22, 2013, ¶ 4; Defendant The Code Corporation's Amended Answer to Plaintiffs' First Amended Complaint ("Code Amended Answer"), Aug. 22, 2013, ¶ 4. Defendants contend that the patent's inventors and their attorneys committed fraud on the PTO during prosecution of the patent by withholding knowledge of the Robotic Vision Systems, Inc. HawkEye 5x series dark field light pipes. *See* Microscan Amended Answer, ¶¶ 4–62; Code Amended Answer, ¶¶ 4–62.

Plaintiffs now move to strike those defenses, alleging that defendants have not pled, and cannot plead, facts with particularity pertaining to a necessary element of the defense—the inventors' intent to deceive the PTO. Plaintiffs emphasize that defendants dedicate much of their discussion of the defense in their Amended Answer to alleging materiality, which is a distinct element of the defense. *See* Memorandum in Support of Cognex's Motion to Strike Defendants' Fourth Affirmative Defense, Sept. 20, 2013, at 4; *see also Avocent Redmond Corp. v. Raritan Americas, Inc.,* 921 F.Supp.2d 229, 243 (S.D.N.Y. 2013). They argue that only two paragraphs of the Amended Answers assert intent, and even those paragraphs only allege intent "on information and belief." *See* Microscan Amended Answer, ¶¶ 61–62; *see also* Code Amended Answer, ¶¶ 61–62.

However, defendants allege a number of facts with particularity from which intent to deceive could be inferred [5]:

- The HawkEye device was on sale more than a year before the '487 patent's application was filed, Microscan Amended Answer, ¶ 5;

- The HawkEye device had an illumination assembly that included a light pipe with a distal chamfered end that had a diffusive surface texture and that emitted both dark field illumination and diffuse bright field illumination, *id.* ¶¶ 5–13;

- William Equitz, one of the '487 patent's inventors, knew that the HawkEye included a light pipe with a distal chamfered end that had a diffusive surface texture and that emitted both dark field illumination and diffuse bright field illumination, *id.* ¶¶ 15, 47, 53;

- Cognex copied the HawkEye to develop their own handheld reader, *id.* ¶¶ 16–22;

- Although all elements of claim 1 of the '487 patent are embodied in the HawkEye device, Equitz did not tell the PTO what he knew, *id.* ¶¶ 34, 38, 40, 42, 44;

- Equitz intentionally withheld from the PTO information about the HawkEye known to him, including that he and others at Cognex had copied the HawkEye, *id.* ¶¶ 34–45, 48–50;

- The Examiner stated that "bright field aspects" and "diffusive lighting aspects" were missing from the prior art, while Equitz knew that the HawkEye included diffuse bright field illumination, *id.* ¶¶ 15, 47, 53, 57; and

---

5. All of these allegations are contained in the same paragraphs of both the Microscan Amended Answer and the Code Amended Answer. The Court cites to the Microscan Amended Answer alone for convenience.

- Equitz intended to deceive the PTO, *id.* ¶¶ 61–62.

Taken together, these allegations, if true, state the "who, what, when, where, and how of the alleged fraud," *Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1327 (Fed.Cir.2009), and include sufficient facts with particularity to plausibly plead the intent element of the affirmative defense, which is the only element contested in the instant motion to strike.

Fifth, the Court denies defendants' motion for sanctions for spoliation to the extent it seeks an "adverse inference" sanction, but otherwise grants sanctions in the form of (a) defendants' costs—including their reasonable attorneys' fees—in making this motion and (b) a fine in the amount of $25,000 payable by plaintiffs to the Clerk of this Court.

On multiple occasions throughout discovery, defendants asked plaintiffs for an optical disk with software related to the HawkEye 51 reader ("the CD") that was in plaintiffs' possession. *See* Declaration of Colin J. Garry in Support of Defendants' Motion for Sanctions for Spoliation of Evidence ("Garry Decl. on Spoliation"), Oct. 1, 2013, Ex. 14 (Email from Steve Hampton, Sept. 18, 2013); *id.,* Ex. 15 (Email from Steve Hampton, Sept. 23, 2013). Plaintiffs promised to provide the CD, *see id.,* Ex. 16 (Email from Jacob Baron, Sept. 24, 2013); but then informed defendants on September 25, 2013 that the CD was damaged and unreadable, *id.,* Ex. 17 (Email from Jacob Baron, Sept. 25, 2013, 2:30PM). Plaintiffs blamed Federal Express for the CD's destruction. *Id.,* Ex. 19 (Email from Jacob Baron, Sept. 25, 2013, 7:01PM). However, well after the CD was specifically requested by defendants, plaintiffs shipped the original CD to their technical expert Jay Eastman, without making any copy of the CD's contents. *See id.* As a result, when the CD was damaged, allegedly during the return from Eastman, there was no copy of the original.

Given this history, defendants move for sanctions for spoliation, specifically in the form of an instruction to be given to the jury that, on the basis of such spoliation, they may, if they wish, draw an inference adverse to plaintiffs on the merits of the case. In the Second Circuit, a party seeking such an adverse inference instruction on the basis of spoliation of evidence must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir.2002) (internal quotation marks omitted).

Regarding the choice of a specific sanction, the court "has broad discretion," although "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999). Moreover, "a court must determine the appropriate sanction based on the relative fault of the party against whom sanctions are sought and the prejudice suffered by the party seeking sanctions." *Richard Green (Fine Paintings) v. McClendon,* 262 F.R.D. 284, 292 (S.D.N.Y.2009) (Francis, Mag. J.) (internal quotation marks omitted).

Here, there is little doubt that Cognex had a duty to preserve the CD after defendants had specifically requested its production on several instances. *See,*

*e.g.,* Garry Decl. on Spoliation, Oct. 1, 2013, Ex. 14 (Email from Steve Hampton, Sept. 18, 2013); *id.,* Ex. 15 (Email from Steve Hampton, Sept. 23, 2013). In these circumstances, Cognex's failure to make a copy of the CD before shipping it to their expert is sufficient to infer a culpable state of mind.

In some instances, this culpable conduct would suffice to warrant an inference that the destroyed evidence was relevant to the party's claim or defense. *See Residential Funding,* 306 F.3d at 107, 109. However, relevance is one thing, and materiality is another. Here, defendants have failed to show how a CD that contained software related to the HawkEye 51 reader would be material to their claims or defenses. This lack of materiality does not excuse plaintiffs' misconduct, but it is highly pertinent to determining what sanction is appropriate. In particular, the absence of materiality suggests that the severe punishment of an adverse inference instruction would here be excessive.

At the same time, the spoliation cannot be ignored, for the Court is mindful of its responsibility to impose sanctions that "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *See West,* 167 F.3d at 779. Accordingly, the Court not only awards defendants their costs associated with this motion, including reasonable attorneys' fees, *see, e.g., Richard Green (Fine Paintings) v. McClendon,* 262 F.R.D. 284, 292 (S.D.N.Y.2009) (Francis, Mag. J.); *ACORN v. Cnty. of Nassau,* 05 Civ. 2301, 2009 WL 605859, at *7 (S.D.N.Y. Mar. 9, 2009) (Wall, Mag. J.), but also, to provide an adequate deterrent to such conduct in the future, fines plaintiffs $25,000, payable to the Clerk of this Court, *see, e.g., Passlogix, Inc. v. 2FA Tech., LLC,* 708 F.Supp.2d 378, 422–23 (S.D.N.Y.2010). Defendants must apprise plaintiffs of their costs and attorneys' fees by no later than January 13, 2014, and, unless there is a genuine dispute concerning same, plaintiffs must pay these amounts to defendants, and must also pay the Clerk of the Court the $25,000 fine, by no later than January 31, 2014.

For these reasons, the Court hereby grants defendants' motion for summary judgment on the notice of infringement issue, awards defendants their costs and reasonable attorneys' fees associated with their motion for sanctions for spoliation and, in connection with the same motion, fines plaintiffs $25,000 payable to the Clerk of this Court. In all other respects, the pending motions are denied. The Clerk of the Court is directed to close documents numbered 65, 66, 67, 68, 75, and 93 in the docket of this case.

SO ORDERED.